Viola C. PRICE, Plaintiff In Error,

v.

Curtis A. PRICE, Defendant In Error.

No. 37244.

Supreme Court of Oklahoma.

Oct. 16, 1956.

Charles E. Grounds, E. Keith Cooper, Seminole, for plaintiff in error.

M. W. Janes, Frank Seay, Seminole, for defendant in error.

CARLILE, Justice.

Viola C. Price (now Webber) and Curtis A. Price are the parents of Barbara Ann Price. The parties were married on January 10, 1948, at Okemah, Oklahoma, and the child was born June 19, 1949. After their marriage the parties lived on a farm near Okemah. Mr. Price, in order to supplement his farm income, obtained employment with a pipeline company. His work

took him into the State of Arkansas. While he was in Arkansas Mrs. Price moved into Okemah, where she rented rooms.

The parties were divorced in 1948. Mr. Price then enlisted in the army and was assigned to duties overseas. While he was overseas the child, Barbara Ann, was born. It is, however, conceded that the child was conceived and born in lawful wedlock. Mrs. Price was unable to care for and support the child. She took it to Seminole to the home of Mr. and Mrs. W. A. Price, parents of Curtis A. Price, and requested that they give the child a home and care for it. The child was then eleven days old. Viola Price also lived in their home with the child until the latter part of 1949.

In October, 1949, Mr. Price obtained leave to return home and on October 13th of that year the parties remarried. Shortly thereafter Mr. Price returned to his duties overseas. However, before leaving he made arrangements for Mrs. Price and Barbara Ann to remain in the home of his parents and made provision for their support.

Several months thereafter Viola Price left the home of Mr. and Mrs. W. A. Price and went to Holdenville where she obtained employment as a waitress in the Holdenville Hotel Cafe, which position she held for several months. During this time she returned several times to Seminole, Oklahoma, to visit her child. She thereafter went to San Antonio, Texas, where she remained for eight months. She thereafter moved to Norman, Oklahoma, where she obtained employment from a photographer. She did not see her child during this period of time. She remained in Norman, Oklahoma, for six months. She then moved to Oklahoma City.

On January 15, 1952, Curtis A. Price, hereinafter referred to as plaintiff, filed a petition for divorce against his wife, Viola Price, hereinafter referred to as defendant. The action was predicated on infidelity. Defendant filed a cross-petition for divorce on the ground of neglect of duty. The trial court granted the divorce to defendant on her cross-petition and the custody of the child Barabara Ann, upon agreement and consent of defendant, was awarded to plaintiff, with the provision that it be kept in the home of Mr. and Mrs. W. A. Price, parents of plaintiff.

Shortly thereafter W. A. Price, by consent of defendant, was appointed guardian of Barbara Ann by the County Court of Seminole County. Defendant thereafter and in the latter part of September, 1952, married Joseph C. Webber, an Army Sergeant, and they now live in and own their own home in Oklahoma City.

On February 10, 1955, defendant filed a motion to modify the child custody provision of the divorce decree and prayed that the custody of the child be awarded to her. The court denied the application, but modified the decree by granting defendant the right and privilege on the first weekend of each month of taking the child to her home for the weekend, but required her to return it to the home of plaintiff's parents in time for school on the following Monday morning.

Defendant appeals from this order and asserts that it is not sustained by the evidence and is contrary to law.

Defendant contends that the contest is actually between her and the paternal grandparents of the child for its custody and relies on the rule that in order to deprive a parent of the custody of a minor child the evidence must clearly establish the unfitness of the parent to have such custody, and that the welfare of the child requires that the parent be deprived of such custody, citing Ex parte Harley, 207 Okl. 71, 247 P.2d 508; Marcum v. Marcum, Okl., 265 P.2d 723, and other similar cases. While this is the general rule, we have also held that while the right of a parent to custody of her minor child is of great importance in determining right to custody, it is not an absolute right, and is qualified by considerations affecting the welfare of the child. Adams v. Adams, Okl., 294 P.2d 831; Nasalroad v. Gayhart, 208 Okl. 447, 257 P.2d 299, and other similar cases.

The evidence shows that the child has been in the custody and care of Mr. and Mrs. W. A. Price, paternal grandparents of the child, ever since it was eleven days old; that they are fit and proper parties to have the custody and care of the child; that they are greatly devoted to it, and that it has been well treated and cared for by them. The evidence shows that defendant voluntarily brought the child to the home of Mr. and Mrs. W. A. Price and requested them to give it a home and care for it. When the second divorce was granted she consented and agreed that the custody of the child be awarded plaintiff and kept in the home of his parents, and that she thereafter agreed and consented to the appointment of W. A. Price as guardian of the child. She, however, testified that she did so because she was in bad health and was unable to provide for the child and she thought at the time it was for the best interest of the child that she should do so. She further testified that circumstances and conditions have changed; that she has since married and is now able to give the child a home and to properly care for and raise the child. There is some evidence to the effect that while plaintiff was in service overseas defendant had been guilty of some acts of indiscretion. This she however denies. Be this as it may, the evidence quite conclusively shows that since she had been married to Sergeant Webber she has lead a proper and moral life. She has joined the church, has been teaching a Sunday School class and attends church regularly. Many of her neighbors and the pastor of her church testified that she is of good moral character and in their opinion she is a fit and proper person to have the custody and control of the child. The trial court made no finding to the contrary, but in his remarks made when pronouncing judgment the court stated:

"* * * I don't think it would be to the best interest of the child to change homes altogether at this time. The child hardly knows its mother and the mother hardly knows the child. I think they should get acquainted. Later on, of course, the order, if the facts justify it can be re-modified. Insofar as modification is concerned it is going to be the order of this Court that the child will remain in custody of the grandparents for the time being, the mother will have the privilege to visit the child at any and all reasonable times to take it out away from the house and on one weekend a month, if she so desires she can take the child to her home in Oklahoma City Friday afternoon, keep it until Sunday afternoon. That way they can become acquainted, but the custody of the child will remain, not in the father,—I notice in his testimony he said he was planning to get married and when he did he was going to take the child. Of course, I don't know so much about that, because the grandparents have custody of the child with the provision I just stated. So that's the order of the Court."

The trial judge saw and heard the witnesses in this case and was in a position to observe their demeanor and conduct. The order of the District Court does not permanently deprive the defendant, the mother, of the custody of her child, but leaves the matter of the custody of the child open for further consideration of the Court which has continuing jurisdiction during minority of the child.

 After carefully considering and weighing the evidence we reach the conclusion that the judgment of the trial court is not clearly against the weight of the evidence and is not contrary to law.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY and JACKSON, JJ., concur.

WELCH and BLACKBIRD, JJ., dissent.