2004 OK CIV APP 55

**Brandy MARTIN, now Vaughan, Plaintiff/Appellant,**

v.

**John MARTIN, Defendant/Appellee.**

**No. 99,292.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 1, 2004.

As Corrected July 1, 2004.

Mark A. Morrison, P.C., Durant, OK, for Plaintiff/Appellant.

Ronnie May, May Law Firm, McAlester, OK, for Defendant/Appellee.

Opinion by JERRY L. GOODMAN, Judge.

¶ 1 Brandy Martin (Mother) appeals the trial court's April 23, 2003, order modifying custody of her minor children. Mother was divorced from John Martin (Father) and was initially granted custody of the children. Father later filed a motion to modify the decree, seeking custody of the children. After a hearing, the trial court granted the motion and changed custody to Father. Mother appeals.

## FACTS

¶ 2 The parties were divorced in September 1998. The decree gave custody of the parties' two children to Mother, with Father receiving visitation rights. Mother remarried. On October 16, 2002, Father filed an application seeking temporary emergency custody of the children. He alleged that Mother's new husband was abusive to the children, and that the children needed to be removed from Mother's home and placed with Father.

¶ 3 The following day Father filed a motion to modify custody. He again alleged that Mother's new husband had been physically and emotionally abusive to the children, and that they were both suffering academically and the youngest child was exhibiting physical symptoms of stress. Father alleged this constituted a material, permanent change of circumstances and that the best interest of the children would be served by placing them in his custody. Mother denied the allegations.

¶ 4 An evidentiary hearing was held January 10, 2003. Thereafter, the trial court entered its order stating that there had been a substantial, material, and permanent change of condition which necessitated a change of custody of the children. However, the order did not specifically identify the change of condition. The Court granted custody of the children to Father and visitation to Mother, who was also ordered to pay child support.

¶ 5 Mother appeals. We reverse.

## STANDARD OF REVIEW

¶ 6 In a case involving a motion to modify, the moving party is required to show evidence establishing a change of condition which has a substantive effect on the best interest of the child. *Gibbons v. Gibbons*, 1968 OK 77, 442 P.2d 482. Modification of child custody is equitable in nature and the trial court's change of custody order will be affirmed on appeal if there is evidence show-

ing that the change in custody is in the best interests of the children due to a significant change of circumstance which directly and adversely affects the children. *Fox v. Fox*, 1995 OK 87, ¶ 6, 904 P.2d 66, 69.

## ANALYSIS

■ ¶ 7 The sole issue on appeal is the correctness of the trial court's decision changing children's custodial parent from Mother to Father. While the trial court states in its order that a substantial change of condition has occurred, the order is silent as to what specifically constituted the change of condition, or what evidence was most persuasive to the trial court in arriving at its decision. Thus, this court is asked to review the correctness of the trial court's determination that a change of condition has occurred, yet we are not told what constitutes that change of condition. In such a circumstance, we will analyze the grounds for change of custody stated by the moving party, and review the evidence to determine if it provides support for the alleged grounds. In this case, we conclude it does not.

¶ 8 We have reviewed the entire record presented, including the transcript of the January 10, 2003, hearing. The testimony centered on the animosity between Father and Mother. Both have since remarried, yet the animosity continues. This animosity is construed and perceived by the parties as a change of condition affecting the well-being of their children. However, it is certainly not a one-sided problem, and the post-divorce relations between Mother and Father seem to be only a continuation of the same relationship the couple had at the time of the divorce. We find, at least as between Mother and Father, that there has been no showing of a substantial change in condition.

¶ 9 The children are caught in the middle of these contentious parties. Without question, they are exhibiting some physiological and emotional trauma as a result of being the subject of litigation. In particular, the evidence reflects the son, age seven at time of trial, is having trouble adjusting in school and is experiencing occasional incontinence, the latter seeming to clearly indicate emotional stress. However, the record does not establish the source of the stress.

¶ 10 There was evidence that Mother and her new husband, both college students when they married, had moved several times, necessitating changing schools for the children. However, at time of trial, the evidence was that this situation was ending, because the new husband had completed his accounting degree and obtained promising employment in Texas. The couple was building a new home. Thus, the moving of the children would not be a permanent change of condition.

¶ 11 Father alleged Mother's new husband was physically abusive of the children, but the evidence did not support that conclusion. At best, Father's evidence is that Mother or her new husband occasionally used corporal punishment as a last resort for discipline problems. However, Father also admitted to using corporal punishment on occasion.

¶ 12 There is a suggestion in the record that the son may be experiencing symptoms of attention deficit hyperactive disorder. However, the evidence was that Mother had been concerned with son's problems and consulted her doctor and was referred to a psychologist. Nothing in this evidence gives any basis for change of custody.

¶ 13 The record reflects that at the conclusion of the testimony, the trial court indicated it would speak to each of the children *in camera*, although from the appellate record, it is not apparent this was done. If so, then the meeting was not transcribed. Ordinarily, in the absence of a complete record, we must presume the trial court did not err. *Hamid v. Sew Original*, 1982 OK 46, 645 P.2d 496. Without examining all the evidence considered by the trial court at that hearing, we cannot conclude, as we must in order to reverse, that the trial court's decision was clearly against the weight of the evidence. *In the Matter of the Estate of Fields*, 1998 OK CIV APP 129, ¶ 12, 964 P.2d 955, 959.

¶ 14 However, in this case, we are inclined not to follow the general presumption because it is not definite there was such a meeting, and even if there was one, it is not apparent that any *in camera* discussion re-

lated in any way to the findings of the trial court. We conclude that a child custody case is of such importance that it should not be decided on conjecture regarding what evidence is absent from the record. We further conclude that a judgment totally without evidentiary support should not stand, particularly one without explanatory rationale giving the parents some basis for the court's conclusion. Parents have no way of determining what errors on their part may have led to the change, and a future trial court has no way of knowing if the new change of condition, which will become the new status quo, has changed yet again.

¶ 15 In this case, there is such a lack of documented change of circumstance that we must reverse the trial court.

¶ 16 REVERSED.

TAYLOR, P.J., and STUBBLEFIELD, J., concur.